*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

  *v.*

WILLIAM DAVID WEST,

  *Defendant-Appellant.*

No. 06-6109

>

---

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 05-00008—Thomas B. Russell, District Judge.

Submitted:  July 17, 2007

Decided and Filed:  March 26, 2008

Before:  MARTIN and McKEAGUE, Circuit Judges; GREER, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:**  Andrew T. Coiner, LAW OFFICE, Paducah, Kentucky, for Appellant.  Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

  MARTIN, J., delivered the opinion of the court, in which GREER, D. J., joined. McKEAGUE, J. (pp. 7-10), delivered a separate dissenting opinion.

---

**OPINION**

---

  BOYCE F. MARTIN, JR., Circuit Judge.  William David West challenges the validity of two search warrants issued by two state court judges.  He argues that the affidavits in support of both search warrants did not support a finding of probable cause.  He also argues that the *Leon* good-faith exception does not apply to rescue the faulty warrants, and that all evidence obtained from these searches should have been excluded.  The district court denied West's motion to suppress evidence seized pursuant to the warrants.  We find that neither search warrant was supported by affidavits establishing probable cause and the *Leon* good-faith exception does not apply.  Accordingly, we

---

  [*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

REVERSE the district court's order denying West's motion to suppress, VACATE the ensuing judgment of conviction, and REMAND for further proceedings in accordance with this opinion.

I.

Sonya Bradley was reported missing from her apartment in Eddyville, Kentucky, having been last seen on October 10, 2002. The Kentucky State Police immediately began an investigation into her disappearance. The disappearance was unusual because Bradley had not informed her mother or her three children about her whereabouts, and she left behind all her personal belongings, including her purse and her medication. One of the investigators stated that "she just vanished." As of the writing of this opinion, Bradley's disappearance remains unresolved.

The Kentucky State Police began investigating West, Bradley's one-time boyfriend, as a possible suspect in Bradley's disappearance. West was purportedly the last known person to see Bradley on the day of her disappearance. On November 28, 2002, Kentucky State Police Troopers learned that West was wanted on an arrest warrant in Indiana for intimidation. That same day, the troopers and local police officers went to West's apartment to arrest him on the Indiana warrant. West, however, refused to come out of his apartment and barricaded himself inside for several hours. During the resulting standoff, police cut power to West's apartment and attempted to persuade West by telephone to surrender. A friend of West's also attempted to persuade him to surrender. Eventually, West began making statements that led police to conclude that he intended to harm himself. The State Troopers attempted to force their way into West's apartment, but West had barricaded the entrances. Finally, a rear window was broken out and police were able to climb through and take West into custody. Police discovered that West had attempted to cut one of his wrists and had ingested a large quantity of either Xanax or Valium.

After West was taken into custody, a search warrant was sought for West's apartment and van. Kentucky State Police Detective Kevin Pelphrey drafted the affidavit in support of the search warrant. The relevant sections of the handwritten affidavit appear as follows:

> [A]ffiant received information . . . [t]hat a felony warrant for the arrest of William David West from Evansville, [Indiana] charging him with assault. An attempt to arrest West was made by KSP officers resulting in West getting into his home and then barricading himself in the residence. Suspect later surrendered to KSP stating that he had taken an overdose of drugs, resulting in him being taken to the hospital for possible treatment.
> Acting on the information received, affiant conducted the following independent investigation:  KSP officers are currently investigating the disappearance of Sonya Bradley in Eddyville, [Kentucky].  Bradley was the girlfriend of William David West with information obtained during the investigation places West as the last person to have contact with the victim. Also West has served time in the correctional system for murder, and attempted murder. West is currently on parole at this time.  Also received information that he is currently dealing in marijuana and prescription medicine.

Much of the information provided in the above affidavit was second-hand knowledge given to Pelphrey by others, namely, the local county sheriff. Pelphrey took the affidavit to the local county district judge, Judge McCaslin, who reviewed the affidavit and issued the warrant. West's apartment was searched, but no evidence was seized. West's van was impounded, but not searched, despite the fact that the search warrant authorized a search of the van.

On November 29, 2002, Kentucky State Police Detective Sam Steger, at the behest of a special agent for the United States Bureau of Alcohol, Tobacco and Firearms (ATF), spoke with an

individual named James Towery, who was believed to have information relating to Bradley's disappearance. According to Towery, West had made a drunken confession indicating that he had accidentally killed Bradley and disposed of her body in a well near Fredonia, Kentucky. This confession allegedly occurred in the driveway of Mary Moody's home in Lyon County, Kentucky. At the time Towery provided this information, he was in federal custody awaiting sentencing on the charge of being a Felon in Possession of a Firearm.

In an attempt to corroborate Towery's story, Steger and Kentucky State Police Officer Steve Bryan searched the area around Fredonia, Kentucky. Steger and Bryan had gone so far as to secure the release of Towery from Federal custody for the express purpose of assisting the officers in their search. However, they were unable to discover Bradley's body or even a well. The officers also attempted to interview Mary Moody in order to corroborate Towery's story, but neither officer was able to remember much about their interaction with Moody at the suppression hearing.

On December 2, 2002, after speaking with Towery and Moody, and unsuccessfully searching the Fredonia area, Steger prepared an affidavit seeking a second search warrant for West's van. The relevant sections of Steger's affidavit read as follows:

> Affiant has been an officer in the aforementioned agency for a period of 5 years and the information and observations contained herein were received and made in his capacity as an officer thereof.
> During the investigation of the disappearance of Sonya Bradley, Det. Sam Steger, Kentucky State Police, received information from James Towery that on November 9, 2002, David West came to Mary Moody's residence in Lyon County, Kentucky, and spoke to James Towery. James Towery stated that David West was very upset and crying and appeared to be under the influence. West stated that he had accidentally killed Sonya Bradley. West further stated that he transported her body to the Fredonia, Kentucky area, and disposed of the body in a well. Based upon the Affiant's investigation it was determined that Sonya Bradley was last seen on October 10, 2002 in the company of David West. The Affiant also determined that West owns a motorcycle and the above stated Chevrolet van.

Steger's affidavit did not reveal any of his unsuccessful attempts to corroborate Towery's statements, leaving out any discussion of the fruitless Fredonia area search and his interview of Moody.

Steger consulted with an Assistant County Attorney regarding his affidavit before presenting it to Graves County District Court Judge Royce Buck.[1] Judge Buck issued the warrant authorizing a search of West's van. The next day, on December 3, 2002, officers searched the van pursuant to the warrant and discovered a bag of fifteen rounds of .38 caliber ammunition in the van's center console. The Kentucky State Police maintained custody of the seized ammunition for over two years before they transferred custody of the ammunition to the ATF in March 2005. On April 1, 2005, two and a half years after the search, West was questioned about the ammunition by Kentucky State Police and the ATF. West claimed that he frequently found ammunition when he cleaned apartments – a job he performed when he needed extra money.

On April 20, 2005, a federal grand jury returned an indictment charging West with one count of being a previously convicted felon in possession of ammunition, in violation of 18 U.S.C.

---

[1]The affidavit was typed by the Assistant County Attorney; however, nothing in the record suggests that Steger made the Assistant County Attorney aware of his unsuccessful efforts to corroborate Towery's statement.

§§ 922(g) and 924(e), and for one count of forfeiture pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461.

Before trial, West moved to suppress the ammunition, arguing that both affidavits in support of the two search warrants contained various falsehoods that were known to the police officers. The district court denied West's motion, finding no deliberately or recklessly false statements in the first affidavit and that the first affidavit established probable cause to search both West's apartment and van. Finding no constitutional violation in the first search, the district court held that "the validity or invalidity of the December 2, 2002 warrant is of no consequence." In the ensuing trial, the jury found West guilty of being a felon in possession of ammunition. He was subsequently sentenced to a prison term of 188 months. This appeal followed.

II.

"When reviewing decisions on motions to suppress, this Court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed *de novo*." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996) (internal citations omitted).

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,...." U.S. CONST. AMEND. IV. Whether a warrant should issue, and the underlying question of whether probable cause has been established, are to be decided "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1947). The Supreme Court has established that a warrant must be upheld as long as the "magistrate had a 'substantial basis for ... concluding' that a search would uncover evidence of wrongdoing...." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal citations omitted). In order to be able to properly determine whether probable cause exists sufficient to issue a warrant, the magistrate must be presented with an affidavit containing adequate supporting facts about the underlying circumstances, either from the direct knowledge of the affiant or from reliable hearsay information; bare conclusions are not enough. *Weaver*, 99 F.3d at 1377. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. We apply this "totality of the circumstances" test to the affidavits presented in this case.

A.    The November 28, 2002 Affidavit

The district court held that Detective Pelphrey's statements in the affidavit were truthful and were sufficient to establish probable cause. We disagree. Pelphrey's affidavit is "bare bones," and does not establish probable cause to believe that evidence of any crime was likely to be found at either West's residence or in his van. *See Weaver*, 99 F.3d at 1378 (holding that "[a]n affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit," and fails to establish probable cause.). The affidavit provides no factual circumstances that would allow an issuing magistrate to make a reasoned determination regarding the veracity, reliability, or basis of knowledge of Pelphrey's handwritten statements. The affidavit states that Kentucky State Police officers are investigating the disappearance of Bradley, and that West was the last person to have contact with her. The affidavit states that West had been convicted and served time for murder and attempted murder. The affidavit also states that unknown sources indicate that West deals marijuana. None of these averments is supported by any facts, and with regard to the conviction for murder and attempted murder, are patently false. All of these statements made by Pelphrey in the affidavit are hearsay, yet no information is included regarding the source of the hearsay information

or the source's veracity, reliability and basis of knowledge. *See Gates*, 462 U.S. at 238. Taken on its face, the affidavit is bereft of any facts that suggest any connection between Bradley's disappearance and any evidence likely to be found at the residence or in the van. Instead, the affidavit is based on unsubstantiated conclusions and unreliable hearsay, and accordingly, is constitutionally deficient. *See Weaver*, 99 F.3d at 1379-80 ("when viewed in the totality of the circumstances, this 'bare bones' affidavit failed to provide sufficient factual information for a finding of probable cause.").

Additionally, because the affidavit is "bare bones," the *Leon* good faith exception does not apply to rescue it. The Supreme Court held in *United States v. Leon*, 468 U.S. 897, 922 (1984), that evidence will not be excluded if it was "obtained by police officers acting in reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." *Leon*, 468 U.S. at 922-23, n. 23.

The *Leon* good faith exception does not apply to rescue a warrant "issued on the basis of a 'bare bones' affidavit." *United States v. McPhearson*, 469 F.3d 518, 525-26 (6th Cir. 2006). The affidavit in this case was so bare bones as to preclude any reasonable belief in the validity of the search warrant that the affidavit supported. As noted above, the affidavit failed to establish a nexus between West's residence and van, and evidence of wrongdoing related to Bradley's disappearance that would support a finding of probable cause. "However, the failure to establish probable cause is not dispositive of whether the affidavit could support a reasonable belief in the validity of the search warrant for purposes of the exclusionary rule." *Id.* at 526. "We previously found *Leon* applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). Just as in *McPhearson*, the minimal nexus required to support an officer's good faith belief was not present in Pelphrey's affidavit.

As discussed above, the only connection between West's residence and van and the disappearance of Bradley was hearsay information that West was the last person to be seen with Bradley. However, not only does that information not establish that any criminal conduct has occurred, let alone that any evidence of such conduct will be found in Bradley's residence or van, but the hearsay information was a bald conclusion unsupported by facts which would allow an independent magistrate to analyze the veracity and reliability of the hearsay information. *See Gates*, 462 U.S. at 238.

Accordingly, we find that the November 28, 2002 affidavit was bare bones and did not support a finding of probable cause by the issuing magistrate. We also hold that the *Leon* good faith exception does not apply to rescue the warrant or any evidence seized pursuant to the warrant. Accordingly, any evidence discovered pursuant to this search warrant should be excluded.

### B.    The December 2, 2002 Affidavit

The district court did not consider West's challenge to this affidavit because it had found that probable cause was established by the first affidavit, and the subsequent search of West's van was authorized by that warrant. As we have invalidated the first warrant, we now turn to the second, and also find it constitutionally deficient. Not only is the December 2 affidavit "bare bones," it also indicates a clear reckless disregard for the truth.

The December 2 affidavit contained one paragraph describing Towery's story that West had drunkenly confessed to murdering Bradley and disposing of the body in a well near Fredonia, Kentucky. This drunken conversation allegedly occurred in Mary Moody's driveway. This information is obviously weak and sparse, but we have held that such information may be enough to establish probable cause if the "authorities undertook probative efforts to corroborate an informant's claims through independent investigations." *Weaver*, 99 F.3d at 1379. Detective Steger, prior to seeking a search warrant, attempted to do just that. Unfortunately his independent investigation did not corroborate Towery's story, but rather undermined it. Officer Steger did not relay to the issuing magistrate that Towery was in federal custody awaiting sentencing when he told his story to investigators. Steger also failed to inform the magistrate that Mary Moody was unable to corroborate Towery's claim that the conversation took place in her driveway. Steger left out of his affidavit the fact that he was unable to locate Bradley's body, the well, or any other evidence related to her disappearance despite the fact that Towery's description of the area was so detailed that Officer Bryan testified that he instantly knew the exact location of which Towery spoke.

The fact that the affidavit prepared by Steger did not accurately reflect the facts known to him at the time the affidavit was sworn evinces a reckless disregard for the truth. In such circumstances we are required to analyze the affidavit "including the omitted portions and determine whether probable cause still exists." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). When the affidavit is viewed as a whole, taking in the totality of the circumstances and the omitted information, it is not probable cause that is depicted, but rather it is a picture of unreliable and uncorroborated hearsay statements of a federal prisoner hoping to garner favor with the government before being sentenced. Accordingly, we find that the affidavit is insufficient to support a finding of probable cause.

Just as the *Leon* good faith exception does not apply to save a "bare bones" affidavit, it also cannot save an affidavit that contains knowing or reckless falsities. *McPhearson*, 469 F.3d at 525. Detective Steger purposely withheld information when he prepared his affidavit. Steger knew that his affidavit was incomplete and misleading to the issuing magistrate, and as such, he cannot be held to have reasonably relied on the search warrant. Accordingly, the *Leon* good faith exception does not apply to save the December 2 affidavit. *Id.*

### III.

We find that neither affidavit established probable cause and neither warrant can be saved by the *Leon* good faith exception. Accordingly, we REVERSE the district court's order denying West's motion to suppress, VACATE West's conviction, and REMAND with instructions, in the event of re-prosecution, to exclude any evidence found pursuant to the two search warrants and any statements given by West after the two searches related to the evidence found.

---
### DISSENT
---

McKEAGUE, Circuit Judge, dissenting. I do not disagree with my colleagues in their assessment that each of the warrants authorizing a search of defendant West's van was based on a weak showing of probable cause. However, the notion that the second affidavit, the December 2, 2002 affidavit of Detective Sam Steger, is so deficient as to be labeled "bare bones," rendering the *Leon* good faith exception inapplicable, is a conclusion that can be reached only by ignoring controlling Sixth Circuit precedent. For this reason, I respectfully dissent. In my opinion, the Steger affidavit, whether supported by a sufficient showing of probable cause or not, is not "bare bones." Therefore, the *Leon* good faith exception should be deemed applicable and the district court's denial of defendant's motion to suppress the seized ammunition should be upheld.

### I

The majority labels the Steger affidavit "bare bones" without explaining why. The sufficiency of an affidavit is assessed in a practical, common-sense, rather than hypertechnical, manner. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). The sufficiency of an affidavit, like the determination of an officer's good faith reliance on it, is an assessment confined to the four corners of the affidavit. *United States v. Hython*, 443 F.3d 480, 487 (6th Cir. 2006); *United States v. Laughton*, 409 F.3d 744, 752 (6th Cir. 2005). A "bare bones" affidavit, an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004), is one "that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).

Detective Steger's affidavit is based primarily on the statement he took from James Towery. The affidavit is admittedly short on indicia of Towery's veracity, but it did not ask the reviewing judge to issue a warrant based on a mere guess or suspicion that incriminating evidence would be found in West's van. The Steger affidavit is based on a damning confession purportedly made in a state of visible distress ("very upset and crying") by the suspect West himself. West's confession represents an admission against interest by the former boyfriend of missing person Sonya Bradley, the last person known to have seen her before she disappeared weeks earlier. The confession was made to and reported by a named informant (not an anonymous informant), on a stated date and at an identified place. The confession included sufficient detail to enable officers to find and search the general location where West said he transported and disposed of Bradley's body. Further, the affidavit identified the vehicle owned by West in which he could be expected to have transported the body, establishing the nexus between evidence of the suspected crime and the vehicle to be searched. In other words, the affidavit attests to the "basis of knowledge" (i.e., a statement to the affiant by the recipient of the suspect's confession); and "reliability" (i.e., a suspect's admission against interest in a state of visible distress). In my opinion, this affidavit, viewed not in a hypertechnical manner, but in a practical, common-sense manner, is not so lacking in indicia of probable cause as to render it "bare bones."

### II

What the majority finds problematic is not what is in the Steger affidavit, but what is not. The majority is troubled by Steger's failure to apprise the reviewing judge of two circumstances arguably bearing on Towery's veracity: (1) that Towery was a federal inmate awaiting sentencing who may have been motivated by self-interest to cooperate with police; and (2) that attempts to

corroborate Towery's statement about West's admission had been fruitless. Steger's failure to include this information is said to evidence a "reckless disregard for the truth."

These omissions, being beyond "the four corners of the affidavit," are generally irrelevant to our assessments of probable cause and good faith. "Whether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in the affidavit." *Laughton*, 409 F.3d at 751-52. The *Laughton* court explained:

> "[T]he relevant question is whether the officer reasonably believed that the warrant was properly issued, *not* whether probable cause existed in fact." . . . To hold otherwise would clearly perch a reviewing court at the edge of the proverbial slippery slope, with courts forced to determine not only how much affiants knew, but also when and from whom they learned it. It would also lead to the very kind of subjectivity that the Supreme Court has repeatedly and explicitly rejected. Given both Supreme Court precedent and our own, we hold that the good faith exception to the exclusionary rule does not permit consideration of information known to a police officer, but not included in the affidavit, in determining whether an objectively reasonable officer would have relied on the warrant.

*Id*. at 752 (citation omitted). "This bright line rule is in harmony with the objective nature of the good-faith test and prevents reviewing courts from delving into an analysis of the subjective knowledge of affiants." *Hython*, 443 F.3d at 487. Hence, the majority's reliance on information not included in the affidavit to assess the objective reasonableness of Steger's reliance on the search warrant issued by Judge Royce Buck is contrary to controlling Sixth Circuit authority.

### III

Moreover, the conclusions drawn from the omissions by the majority appear to be unjustified. None of the omitted facts indicates that Towery's statement or West's confession was in any respect untrue. The record shows that Detective Steve Bryan (1) had the impression that Mary Moody had not overheard the conversation between West and Towery in her driveway, and (2) could not recall whether Moody was able to confirm that West talked to Towery. The record, however, does not suggest that the conversation did not take place. Similarly, the officers' inability to find Sonya Bradley's body in the area where West purportedly said he placed it weeks earlier does not negate the probability that he transported the body to that or another location in his Chevy van.

Yes, the omitted information *might* have been useful to the reviewing judge in assessing veracity and reliability, but Steger was not obliged to include everything he knew in the affidavit. For instance, Steger knew that West had admitted seeing Bradley on the day she allegedly disappeared but had denied any knowledge of her whereabouts. Even though this statement by West contradicted Towery's statement, arguably bearing on Towery's veracity, no court would hold that an affiant is obliged to include a suspect's denial in his affidavit. This underscores the reason why probable-cause and good-faith determinations are based on what is included in, not what is left out of, the affidavit.

Indeed, in the very case cited by the majority, *United States v. Atkin*, 107 F.3d 1213 (6th Cir. 1997), the Sixth Circuit recognized "that an affidavit which *omits* potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *Id*. at 1217 (emphasis added). This is so, the court explained, because an allegation of omission "'potentially opens officers to endless conjecture about investigative leads, fragments of information that might, if included, have redounded to defendant's

benefit." *Id*. (quoting *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)). *See also United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001). The court's obligation, per *Atkin*, to consider the omitted information in evaluating the sufficiency of the affidavit, is triggered only if the defendant has made a preliminary showing "that the government engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit." *Atkin*, 107 F.3d at 1217.

For instance, if Mary Moody had told Steger that she was with West during his entire visit and never heard West tell Towery or anyone else that he accidentally killed Bradley, and that she overheard Towery planning the fabrication of the story in order to win favor with law enforcement officials, then Steger would have had knowledge of facts demonstrating the falsity of information included in his affidavit. Under those circumstances, the inclusion of Towery's statement in the affidavit without inclusion of Moody's statement would suggest a deliberate attempt to mislead or reckless disregard of the truth. If such a showing were made, *then* the sufficiency of the affidavit would have to be evaluated with consideration of the omitted material.

Here, however, we find no false or misleading statement in the Steger affidavit. The record gives us no reason to believe other than that the affidavit accurately recounts the statement Steger received from Towery. Further, consideration of the contents of West's reported confession to Towery and the circumstances under which it was made support a finding of reliability. The fact that Steger's efforts to corroborate Towery's statement proved fruitless does not mean the statement was false; only that it remained uncorroborated.

Further, Steger's efforts to corroborate Towery's statement evidence the good-faith thoroughness of his investigation before seeking a warrant to search the van. When his efforts to corroborate came up empty, Steger reasonably took what information he had and presented it to the assistant county prosecutor for preparation of the warrant application. This consultation with the local prosecutor evidences objective good faith. *Laughton*, 409 F.3d at 753 (J. Gilman dissenting) (citing *Massachusetts v. Shepard*, 468 U.S. 981, 989 (1984); *United States v. Bynum*, 293 F.3d 192, 198 (4th Cir. 2002)). The prosecutor did not reject the information as patently insufficient. Rather, he helped prepare the application for presentation to Judge Royce Buck. Judge Buck read the affidavit and did not reject it as insufficient, but issued the warrant.[1]

As to why we should hold Detective Steger to have seen, in objectively reasonable good faith, what Judge Buck and the prosecutor did not, i.e., that the affidavit apparently did not include sufficient indicia of probable cause, the majority relies on Steger's *subjective* knowledge. This is precisely the sort of inquiry we are not allowed to make, per *Laughton* and *Hython*. The good faith test is an objective one. Again, "[w]hether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in the affidavit." *Laughton*, 409 F.3d 751-52. By going outside the four corners of the affidavit to disqualify the seized ammunition from the protection of the *Leon* good faith exception, the majority has, in my opinion, gone outside our well-established precedent.

## IV

Considering the totality of the circumstances evident from the affidavit, and mindful of our duty to afford deference to the issuing judge's determination unless made arbitrarily, I continue to believe that the Steger affidavit was not so lacking in indicia of probable cause as to render reliance

---

[1]In the evidentiary hearing on the motion to suppress, Judge Buck confirmed that he believed the affidavit was sufficient to establish probable cause and that his assessment would not have changed had he been advised that Towery was in federal custody when he gave the statement to Steger.

on it objectively unreasonable.  In relying on the search warrant issued upon his own affidavit, which contains no falsity or misleading statement or inherent defect, and had been prepared by the assistant prosecutor, Steger should be deemed to have acted in objective good faith. The *Leon* good faith exception should therefore be deemed applicable to protect the seized ammunition from exclusion even if probable cause were actually lacking.  Accordingly, I would affirm the district court's denial of the motion to suppress.