RENDERED: APRIL 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0481-MR

COMMONWEALTH OF KENTUCKY                      APPELLANT

v.            APPEAL FROM BULLITT CIRCUIT COURT
HONORABLE RODNEY DARREL BURRESS, JUDGE
ACTION NO. 20-CR-00280

DENNY JOE DAUGHERTY                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND ECKERLE, JUDGES.

CETRULO, JUDGE: The Commonwealth appeals the Bullitt Circuit Court order which granted Appellee Denny Joe Daugherty's ("Daugherty") Kentucky Rule of Civil Procedure ("CR") 60.02 motion to reconsider his motion to suppress. In so doing, the circuit court reversed its prior order and granted Daugherty's motion to suppress. Finding no error, we affirm.

# I.   FACTUAL AND PROCEDURAL HISTORY

On July 7, 2020, Colonel Marcus Laytham ("Col. Laytham") received two anonymous voicemails on the Bullitt County Sheriff's Office crime tip line. The voicemails stated that Daugherty was selling marijuana from his residence and that he had multiple firearms there. That day, Col. Laytham conducted surveillance on Daugherty's residential street, Belair Drive. Three days later, after a series of investigative stops, the district court issued a search warrant for Daugherty's residence, and the Bullitt County Sheriff's Office executed the warrant. There, deputies seized numerous firearms, more than five pounds of marijuana, marijuana products and paraphernalia, and a sum of cash. In August 2020, a grand jury indicted Daugherty for trafficking in marijuana, greater than five pounds, first offense, while in possession of a firearm.

In March 2021, Daugherty filed a motion to suppress the evidence seized from his house. He claimed the affidavit that Col. Laytham submitted with the search warrant was not sufficient. Specifically, he argued the affidavit failed to state a reasonable and articulable suspicion because it was based on anonymous tips and allegedly unconstitutional traffic stops involving individuals simply seen on Belair Drive.

At the March 2021 suppression hearing, Col. Laytham testified that the two July 2020 voicemails occurred within a two-hour period and appeared to

be from the same caller.[1] After receiving the tips, Col. Laytham conducted surveillance of Belair Drive; however, from his vantage point, he could not see Daugherty's residence. Col. Laytham testified that he saw a vehicle turn onto Belair Drive, then leave six minutes later. He could not see whether the driver visited Daugherty's residence. Nevertheless, when the driver turned off Belair Drive, Col. Laytham followed him and conducted an investigative stop. During the stop, the driver explained that he had purchased two electronic-cigarette vaping cartridges from "Denny" on Belair Drive. The driver then consented to Col. Laytham searching his vehicle, where he found the "THC[2] cartridges and one glass pipe with marijuana residue." Despite the admission, Col. Laytham did not administer a citation because the driver had been "cooperative."

Two days later, Col. Laytham conducted similar surveillance and saw a second vehicle turn onto Belair Drive. Again, Col. Laytham could not see Daugherty's residence from his vantage point; therefore, he could not confirm whether the vehicle went to Daugherty's residence. When this driver left Belair Drive after a few minutes, Col. Laytham followed the driver and conducted an investigative stop. This driver, however, did not provide any information

---

[1] Although Col. Laytham did not check the phone numbers, he explained that the voice and information provided were nearly identical.

[2] Tetrahydrocannabinol is the primary psychoactive cannabinoid extracted from marijuana.

regarding Daugherty. Col. Laytham noted that he saw an electronic cigarette vaping device "in plain view," which was "consistent with [their] previous stop." However, again, Col. Laytham did not cite the driver.

The next day, a different detective in Col. Laytham's office, Floyd Cook ("Detective Cook"), surveilled the area from a similar location. However, Col. Laytham testified that, to the best of his knowledge, Detective Cook had a different vantage point and could see Daugherty's driveway. Therefore, the affidavit for the search warrant – drafted by Col. Laytham – stated that, Detective Cook "saw the [vehicle] enter the driveway [at Daugherty's residence,]" although the investigative report from that encounter did not state that Detective Cook could see Daugherty's driveway. Nevertheless, Detective Cook followed the vehicle when it pulled off Belair Drive six minutes later and called Col. Laytham to share the information.

Col. Laytham drove to the location of the third vehicle with another detective ("Detective Pressley"), and by that time, the third driver had made it home and parked near his driveway. Col. Laytham did not recall turning on his lights or officially "pulling over" the driver. Upon reaching the vehicle, Col. Laytham noticed an "extremely strong" odor of marijuana in the passenger compartment of the vehicle. After a conversation, the driver surrendered a large bag of marijuana and stated he had gotten it from someone named "Pappy" who

lived "off Hwy 61." Col. Laytham testified that after additional questioning, the driver confirmed "Pappy" was Daugherty; however, the affidavit for the search warrant did not state that the driver confirmed as much. The affidavit simply stated that the driver allowed Col. Laytham to look at his phone, where Col. Laytham saw a contact for "Denny" with the correct phone number listed. Again, Col. Laytham did not cite or charge the driver for the items he seized.

After those stops, Col. Laytham drafted the search warrant. The affidavit he submitted in support stated that he had received two tips; however, Col. Laytham did not reveal that he believed both tips were from the same caller. The affidavit then explained the events of the first and third investigative stops – leaving out the second stop. Further, the affidavit did not indicate that any of the three drivers had committed an infraction to justify the investigative stops, but that Col. Laytham conducted them because they drove onto Belair Drive, then left after a short period of time.

Daugherty argued that the circuit court should grant his motion to suppress because the affidavit was misleading as to how many people had called in tips and misleading as to the number of traffic stops. Daugherty argued the stops had been conducted without probable cause, and Col. Laytham's reliance on those stops for the search warrant was improper. Moreover, he did not believe that Col. Laytham gave the warrant-issuing judge complete information. Daugherty argued

that if the second stop, which had not resulted in any information, had been disclosed, that could have affected the decision to issue the warrant.

In August 2021, the circuit court denied Daugherty's motion to suppress. The order detailed the events of the investigation and concluded that there was no evidence the two investigative stops were "illegal." Further, Daugherty had not presented evidence of an unlawful detention or coercion in either traffic stop. Additionally, the circuit court took issue with Daugherty's standing to contest the legality of those traffic stops and confirmed Col. Laytham had used the stops to corroborate the anonymous tips. As such, the circuit court found the information "was properly submitted as part of the 'totality' of the circumstances on which the District Judge based her decision to grant the search warrant," citing *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

The next month, however, Daugherty filed a CR 60.02 motion asking the court below to reconsider its August 2021 order. The motion to reconsider asserted that despite the circuit court's initial finding that there had been no evidence of illegality or coercion, there was new evidence of record indicating some level of coercion based on Col. Laytham's prior statements. Specifically, Daugherty cited Col. Laytham's testimony stating (1) he did not charge the first driver because "he was very cooperative"; and (2) he "emphatically said" there

-6-

were no other stops related to the investigation (only the three he had discussed). At the suppression hearing, Daugherty's attorney had asked Col. Laytham outright, "were there any other stops that you all made of vehicles?" and Daugherty quickly answered "no, that was it." Daugherty's attorney pressed again, "there wasn't a fourth stop? Somebody wasn't charged with anything? You're certain of that?" and Col. Laytham said, "Not by my – I did not stop anybody else."

At a subsequent *Franks*[3] hearing, Daugherty argued he had learned additional information regarding a fourth investigative stop since the suppression hearing. Daugherty claimed that at a fourth stop "law enforcement repeatedly asked [the driver] about [Daugherty] and apparently[,]" when not given the answers they sought, charged the occupants of the fourth vehicle. Daugherty noted he did not have the opportunity to cross-examine Detective Pressley, who had made the fourth stop, because Col. Laytham did not confirm that stop. Additionally, Daugherty emphasized that the August 2021 order stated the detectives gathered information in the affidavit from individuals seen leaving Daugherty's home, but as discussed, the police record did not indicate that any detective could see Daugherty's residence during surveillance. Again, Daugherty

---

[3] *Franks v. Delaware*, 438 U.S.154, 155-56, 98 S. Ct. 2674, 2676, 57 L. Ed. 2d 667 (1978), which held that a defendant is entitled to an evidentiary hearing when he or she makes a "substantial preliminary showing" that the affiant made a false statement in the affidavit.

argued the district judge likely would not have signed the search warrant if the "totality of the circumstances" had been made available.

In January 2022, the circuit court conducted a second suppression hearing to address the motion for reconsideration. Col. Laytham testified that when Detective Pressley made the fourth stop, Col. Laytham had been at the office drafting the search warrant affidavit. He further testified that Detective Pressley had called him while making the stop and informed him that they had found some marijuana in the vehicle but that "they didn't have anything to tie it back to the location [*i.e.*, Belair Drive]."

Detective Pressley testified that he had conducted the fourth stop, which involved a vehicle occupied by Brent and Lacy Meyer (together, the "Meyers"). Detective Pressley explained that a detective who had been surveilling Belair Drive called him and informed him a vehicle was "leaving the area." Detective Pressley then located the Meyers' vehicle and conducted an investigative stop – citing a broken taillight. During the stop, the Meyers notified Detective Pressley that they had marijuana; however, the Meyers told him they were not going to tell him where they got the marijuana. Therefore, Detective Pressley arrested the Meyers. He testified that if they had told him where they got the marijuana, he probably would not have arrested them.

Lacy then testified that Daugherty was a family friend of her and her husband, and they periodically stayed overnight on Daugherty's property. She testified that on the day they were arrested, they had been staying on Daugherty's property but had not seen or spoken with him that day. When they left the property and turned off Belair Drive, a detective followed them until Detective Pressley pulled them over a few roads away.

Lacy testified Brent had told Detective Pressley he had some marijuana in the car, and Detective Pressley had them step out of the car and interrogated them, continually asking from whom they bought the marijuana. Brent told Detective Pressley it was from someone with whom he worked, but Detective Pressley insisted that he already knew who it was from and just needed them to confirm it. Lacy testified that Detective Pressley did not state that they were looking for the name "Daugherty" explicitly, but they did suggest that they knew it came from Belair Drive and they were looking for an answer associated with that area. Further, Detective Pressley told the Meyers that if they did not give him a name, he was going to arrest them. They did not provide Daughtery's name, and then Detective Pressley arrested them.

Following this second hearing, in March 2022, the circuit court entered an order setting aside its prior order, now granting Daugherty's renewed motion to suppress. The March 2022 order explained the second suppression

hearing produced testimony that the first and third drivers were permitted to leave the scene, uncharged, while the fourth driver was "arrested after they refused to implicate [Daugherty]." The circuit court found that this "selective enforcement" violated equal protection and justified suppression. Further, it concluded Col. Laytham's failure to notify the warrant-issuing judge of "deals" made with individuals he stopped was grounds for suppression. In support, the circuit court noted that Lacy's testimony documented "the arbitrary nature of enforcing the law in this investigation[]" because the detectives arrested the Meyers for possession although they declined to arrest or cite drivers one or three for possessing the same controlled substance.

The circuit court identified the appropriate standard to issue a warrant – probable cause – and determined Lacy's testimony had shed "a new light on the nature of law enforcement[']s information which was presented to the [warrant-issuing] judge in her evaluation of probable cause." The detectives arresting only those who did not divulge a name was "strong motivation for an individual to be less than truthful in their statement to law enforcement."

Specifically, the circuit court explained that the affidavit failed to disclose that drivers one and three had been "promised that they would not be charged if they disclosed that [Daugherty] had sold them the illegal substances." That information, the court noted, was clearly known to Col. Laytham, who had

-10-

submitted the affidavit. The court stated that the information clearly related to the veracity of the first and third drivers and was omitted from the affidavit. The circuit court recognized its duty to analyze such omissions in light of the affidavit and determine if probable cause still existed. In analyzing the affidavit, the court noted that it simply referenced two anonymous calls – failing to suggest that they were made by the same person – which were substantiated solely by the statements of drivers one and three. Importantly, the circuit court noted, the veracity of the statements from drivers one and three was "clearly in question and those facts were omitted and not disclosed to the magistrate evaluating the [affidavit]." As such, the circuit court concluded there was insufficient information to support a finding of probable cause and suppressed the evidence seized from Daugherty's residence. The Commonwealth appealed.

## II.   STANDARD OF REVIEW

> The decision to grant or deny a motion under CR 60.02 . . . rests within the trial judge's sound discretion. Accordingly, we apply an abuse of discretion standard of review to a [circuit] court's rulings on . . . CR 60.02 motions. The test for abuse of discretion is "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."

*Copas v. Copas*, 359 S.W.3d 471, 475 (Ky. App. 2012) (citations omitted).

To review suppression hearing rulings regarding a search warrant, we determine whether the trial court's findings of fact were supported by substantial evidence. *Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky. 2010) (citation omitted). "'[S]ubstantial evidence' is '[e]vidence that a reasonable mind would accept as adequate to support a conclusion' and evidence that, when 'taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men.'" *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations omitted).

Then, we determine whether the circuit judge, considering the totality of the circumstances, "correctly determined that the issuing judge did or did not have a 'substantial basis for . . . concluding' that probable cause existed." *Pride*, 302 S.W.3d at 49 (quoting *Gates*, 462 U.S. at 236[4]). "In doing so, all reviewing courts must give great deference to the warrant-issuing judge's decision." *Id.* (citing *Gates*, 462 U.S. at 236.)

### III.   ANALYSIS

The Commonwealth argues that the circuit court's findings of fact were not supported by substantial evidence, that it applied the wrong legal standard, and that it erroneously concluded that the search warrant was not

---

[4] The Kentucky Supreme Court adopted the *Gates* "totality of the circumstances" test in *Beemer v. Commonwealth*, 665 S.W.2d 912, 915 (Ky. 1984). *Pride*, 302 S.W.3d at 48.

supported by probable cause. Additionally, the Commonwealth appears to also argue that Daugherty failed to meet the "higher bar" required to obtain a *Franks* hearing regarding Col. Laytham's alleged omissions in the affidavit. *See United States v. Fowler*, 535 F. 3d 408, 415 (6th Cir. 2008). However, the Commonwealth failed to object to the suppression hearings or to the proposed testimony before the circuit court; therefore, those issues are not properly before this Court. *See Brooks v. Byrd*, 487 S.W.3d 913, 919 (Ky. App. 2016).

### A. Findings of Fact

First, the Commonwealth argues that the circuit court did not provide substantial evidence to support its findings that (1) drivers one and three "had been promised that they would not be charged if they disclosed that [Daugherty] had sold them the illegal substances"; and (2) that the Meyers were charged because they failed to implicate Daugherty.

As to the first finding, the Commonwealth argues that there was no testimony that the detectives made a promise to those drivers. During the first suppression hearing, Col. Laytham testified that he conducted an investigative stop on drivers one and three for the primary purpose of determining why the drivers had been on Belair Drive and to see if it corresponded to the information from the anonymous tips regarding Daugherty. At the second suppression hearing, Col. Laytham explained that for drivers one and three, even though both surrendered

-13-

illegal substances and implicated Daugherty, he simply thanked them for their time and "sent them on their way."

At the second suppression hearing, Detective Pressley testified that he participated in the third and fourth stops. Detective Pressley testified that he initiated his stops because he believed the drivers were leaving Daugherty's residence. Further, Detective Pressley testified that if the Meyers had implicated Daugherty, he probably would have let them go. Following the testimony, the circuit court stated it was concerned that the detectives were pulling people over and telling them, "if you squeal on somebody, I'm going to let you go, if you don't, I'm going to lock you up, and that's the testimony I've got here today." The circuit court's March 2022 order acknowledged that testimony, noting that the first and third drivers could "leave the scene upon surrender of the drugs upon their advising the officer that the drugs were obtained from [Daugherty]." In contrast, the circuit court noted, the Meyers "were arrested after they refused to implicate [Daugherty]." The circuit court emphasized that Lacy Meyers' testimony at the second suppression hearing shed "a new light on the nature of law enforcement[']s information."

For the circuit court's second finding of fact, the Commonwealth argues Detective Pressley's testimony established the Meyers were arrested because they "weren't going to say" where they got the marijuana (not because

-14-

they were not going to say Daugherty sold them the marijuana). However, Lacy testified that Brent had told the detective where he got the marijuana – a friend with whom he worked – it simply had not been the name the detectives wanted. It is true, Detective Pressley did not specifically tell the Meyers that they needed to give him the name "Daugherty"; however, Lacy did testify that Detective Pressley told her they were looking for a name associated with Belair Drive and that they "knew the marijuana came from that area." Importantly, Col. Laytham and Detective Pressley testified that they specifically focused on "that area" to surveil Daugherty.

Additionally, Detective Pressley acknowledged that the Meyers had cooperated and told him about the marijuana when he asked if there was anything he needed to know about in the car. Based on his testimony, the only difference between driver three (who was allowed to leave after surrendering marijuana) and driver four (who was arrested after surrendering marijuana) was that the former implicated Daugherty. Detective Pressley even testified that if the Meyers had given him Daugherty's name, he probably would have let them go.

As discussed, findings are sufficiently supported when there is adequate evidence to support a conclusion, "taken alone or in the light of all the evidence[.]" *Moore*, 110 S.W.3d at 354 (citation omitted). The testimony here provided substantial evidence to support the trial court's findings of fact. It is not

our role to substitute our opinion as to the trial court's findings of fact where, as here, there was substantial evidence to support those.

## B. Conclusions of Law

However, the Commonwealth also argues that the circuit court failed to determine whether the warrant-issuing judge "had a substantial basis to issue the warrant" and "failed to give the required deference" to the determination of the warrant-issuing judge. Again, we must disagree with the Commonwealth; the circuit court applied the appropriate legal standards.

The Commonwealth argues that "[a] judicial officer's inquiry into the existence of probable cause must be confined to those circumstances stated in the affidavit." *Rawls v. Commonwealth*, 434 S.W.3d 48, 58 (Ky. 2014) (citation omitted). That is true. However, as the circuit court's March 2022 order stated, "[w]hen information is *omitted* from an affidavit in support of a warrant[,] the court must then analyze the affidavit [including the omitted portions] and determine if probable cause still exists." *See United States v. West*, 520 F. 3d 604, 611 (6th Cir. 2008). In those cases, the four corners of the affidavit do not suffice.

Further, the circuit court correctly identified the standard for determining whether probable cause[5] existed in such situations: totality of the

---

[5] Probable cause is a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit[] there is a fair probability that contraband or evidence of a crime will be

-16-

circumstances.[6] The circuit court specifically noted that its duty was to ensure the issuing judge had a "'substantial basis for . . . concluding' that probable cause existed," citing *Gates*, 462 U.S. at 238-39. As such, we find that the circuit court applied the appropriate standards in its decision to reconsider its prior ruling and grant the motion to suppress. Next, we must determine whether the circuit court's determination following that analysis was without error.

The Commonwealth argues that the circuit court erred when it determined that the affidavit did not establish probable cause, claiming probable cause did exist because there was an anonymous tip identifying Daugherty, his residence, and the kinds of contraband in his residence. The Commonwealth argues that the first and third drivers' admission to possession of narcotics increased the veracity of their statements implicating Daugherty and provided probable cause.

First, as the circuit court noted, the issuing judge was not advised in the affidavit that the anonymous tips were believed to be from the same person. Further, the circuit court found that the detectives had influenced those drivers' "admissions"; therefore, the veracity for truthfulness was diminished. Daugherty

---

found in a particular place." *Minks v. Commonwealth*, 427 S.W.3d 802, 810 (Ky. 2014) (quoting *Gates*, 462 U.S. at 238).

[6] At one point, the circuit court called this "totality of the *evidence*," but we find such terminology to be synonymous because the circuit court cited to references of "totality of the circumstances" multiple times and clearly understood the standard.

presented evidence at the suppression hearings that the detectives let people leave the scene – uncharged – when they implicated Daugherty and arrested those who committed the same offense but did not implicate Daugherty.

The circuit court, quoting *West*, 520 F. 3d at 611-12, concluded that the affidavit, when "viewed as a whole, taking in the totality of the circumstances and the omitted information, it is not probable cause that is depicted, but rather it is a picture of unreliable and uncorroborated hearsay statements of a [witness] hoping to garner favor with the government[.]" In *West*, the Sixth Circuit concluded the affidavit indicated a "clear reckless disregard for the truth" because the officer "did not accurately reflect the facts known to him at the time the affidavit was sworn[.]" *Id.* at 611. In such situations, the Court explained, "we are required to analyze the affidavit 'including the omitted portions and determine whether probable cause still exists.'" *Id.* (quoting *United States v. Atkin*, 107 F. 3d 1213, 1217 (6th Cir. 1997)).

Here, like in *West*, the circuit court analyzed the affidavit in light of the omissions, and found that the witnesses who implicated Daugherty and were not arrested had "garnered favor with the government because of their statements[.]" *See id.* at 612. In *West*, the Court explained that "[t]he fact that the affidavit prepared by [the officer] did not accurately reflect the facts known to him at the time the affidavit was sworn evinces a reckless disregard for the truth."

-18-

Similarly, here, the circuit court found the anonymous tips – from a single caller – and the corroborating hearsay from individuals who detectives declined to charge for implicating Daugherty created similar issues of reliability. Col. Laytham had testified that he knew most of those facts at the time he drafted the affidavit but failed to include them. As such, the circuit court relied upon sound legal principles and a thorough examination of the testimony presented and found the affidavit, in light of the omitted information, did not support a finding of probable cause. Without that omitted information, the court ruled, there was not a substantial basis for the warrant-issuing judge to issue the warrant. The circuit court did not abuse its discretion in making such determinations.

## IV.   CONCLUSION

The Bullitt Circuit Court exercised its discretion and found that, in light of the omissions, Col. Laytham's search warrant affidavit had not provided a substantial basis for the district court to conclude there was probable cause to search Daugherty's residence. As such, we AFFIRM the circuit court's March 2022 order granting Daugherty's motion to suppress and setting aside its August 2021 order.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

John A. Cook
Shepherdsville, Kentucky