MILES, District Judge.
 

 Defendant Sanford I. Atkin, an attorney, appeals Ms conviction and sentence on multiple charges arising out of Ms acceptance of $550,000 from Reuben Sturman, a defendant in a federal tax prosecution. In the indictment, the government alleged, among other things, that Atkin had obtained the money from Sturman by falsely representing that he, Atkin, would bribe the UMted States District Judge presiding over Sturman’s criminal case. Atkin never did bribe the judge, and he now challenges the sufficiency of the evidence to support Ms convictions on two counts of obstruction of justice. Atkin also challenges the district court’s demal, without an evidentiary hearing, of his motion to suppress, as well as the district court’s decision to enhance Ms sentence for obstruction of justice and money laundering under U.S.S.G. § 3B1.3 on the basis that Atkin used Ms skills as an attorney to significantly further or conceal those offenses. For the reasons to follow, we AFFIRM.
 

 /
 

 On November 4, 1994, a federal grand jury sitting in the Northern District of OMo returned a 30-count indictment charging Sanford Atkin, a Cleveland attorney, with various offenses including two counts of obstruction of justice, in violation of 18 U.S.C. § 1503; seven counts of interstate transportation of property obtained by fraud, m violation of 18 U.S.C. § 2314; 11 counts of engaging in a monetary transaction in criminally derived property, in violation of 18 U.S.C. § 1957; one count of witness tampering, in violation of 18 U.S.C. § 1512; four counts of income tax evasion, in violation of 26 U.S.C. § 7201; four counts of filing false tax returns, in violation of 26 U.S.C. § 7206; and a final count wMch sought criminal forfeiture of $230,-202, pursuant to 18 U.S.C. § 982, based on the involvement of the funds in Atkin’s violation of 18 U.S.C. § 1957. The charges arose out of Atkrn’s acceptance of large sums of money from -Reuben Sturman, a world-wide distributor of “adult” materials who was a defendant in a federal tax evasion case in Cleveland, Ohio. Atkin ultimately accepted a total of $550,000 from Sturman under the pretense that Atkin would give the money to the UMted States District Judge to whom the tax evasion case was assigned.
 

 Atkin did not represent Reuben Sturman in the tax evasion case; Sturman had retained other counsel who had successfully represented him in a number of obscemty prosecutions. Instead, Atkin’s oMy official role in the tax evasion case consisted of serving as local counsel for Sturman’s son David, who was also a defendant in the ease.
 
 [1]
 
 However, Atkin performed little work on behalf of David Sturman who, like Ms father, had other counsel. When the case went to trial in September, 1989, AtMn did not participate.
 

 At the conclusion of a two-month trial on November 17, 1989, the jury in the tax evasion case reached a verdict finding both Reuben and David Sturman guilty on all charges. Reuben Sturman, who had apparently predicted such an outcome, attempted to ensure that he would remain free on bond pending sentencing and an appeal. Believing that Atkin was a close friend of the district judge presiding over the case, Sturman sought At-kin’s assistance in bribing the judge to rule in Sturman’s favor on the bond issue. Atkin agreed to help, and between November 6, 1989 and January 11, 1990, he accepted a total of $300,000 from Sturman for the purpose of bribing the district judge. Unbeknownst to Sturman, Atkin did not in fact use Sturman’s money to bribe the district judge, although the judge did, coincidentally, allow Sturman to remain free on bond pending sentencing and appeal. The district judge sentenced Sturman to 10 years impris
 
 *-368
 
 onment. Sturman’s appeals did not succeed, and he ultimately began serving his sentence, which was to run concurrent with a second four-year sentence imposed after Sturman entered a guilty plea on separate obscenity charges brought in federal court in Las Vegas, Nevada.
 

 Subsequently, Sturman again sought At-kin’s assistance in bribing the district judge to secure a ruling in Sturman’s favor in the tax evasion case, this time on a motion under Fed.R.Civ.P. 35 seeking a reduction of his 10-year sentence to three years. Atkin again agreed to help, and during May, 1992, Sturman made additional payments to Atkin totalling $250,000 for the purpose of bribing the judge to grant Sturman’s Rule 35 motion. However, although Atkin did at one point approach the district judge in chambers and attempt to engage him in a discussion of Sturman’s situation, the district judge refused to discuss the case.
 
 [2]
 
 Once again, Atkin kept all of Sturman’s money for himself. Sturman, through his trial counsel, subsequently filed three separate Rule 35 motions; not surprisingly, all three were denied. In December, 1992, only days after his third motion was denied, Sturman escaped from a federal prison. He was subsequently recaptured, and he and others associated with him ultimately cooperated in the government’s investigation of Atkin.
 

 On June 21, 1995, the jury found Atkin guilty on 28 of the 29 counts in the indictment, acquitting him only of witness tampering. In a bifurcated proceeding, Atkin was also required to forfeit $230,202 worth of property, pursuant to Count 30 of the indictment, On September 14, 1995, the district court sentenced Atkin to 63 months imprisonment, three years of supervised release, and a fine of $12,500. Atkin filed this timely appeal.
 

 II
 

 A.
 

 After his indictment, Atkin filed a motion to suppress evidence seized during searches of his office and residence, arguing that the affidavits relied upon in obtaining the search warrants contained material misstatements and omissions essential to a finding of probable cause. The district court denied the motion without conducting an evi-dentiary hearing, concluding that application of the totality of the circumstances test, as required by
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), more than justified the issuance of the search warrants. Atkin now argues that the district court erred in denying his motion to suppress without first conducting a hearing under
 
 Franks v. Delaware,
 
 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). More specifically, Atkin argues that the affidavits submitted in support of the warrants omitted material information and thereby misrepresented the reliability of Reuben Sturman, Sturman’s ex-wife Naomi Delgado, and other Sturman associates who had provided information to the government. We review a district court’s decision on a motion to suppress under two complementary standards: first, we uphold the district court’s findings of fact unless they are clearly erroneous; and second, we review the district court’s legal conclusions
 
 de novo. United States v. Leake,
 
 998 F.2d 1359, 1362 (6th Cir.1993).
 

 Franks
 
 recognized a defendant’s right to challenge the sufficiency of an executed search warrant on the basis that “a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and ... the allegedly false statement is necessary to the finding of probable cause[.]” 438 U.S. at 155-56, 98 S.Ct. at 2676. However, under
 
 Franks
 
 the defendant is entitled to an evidentiary hearing on the veracity of the statements in the affidavit
 

 if and only if (1) there is a substantial preliminary showing that specified portions of the affiant’s averments are deliberately or recklessly false
 
 and
 
 (2) a finding of
 
 *-367
 
 probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side.
 

 United States v. Campbell,
 
 878 F.2d 170, 171 (6th Cir.) (emphasis in original),
 
 cert. denied,
 
 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 194 (1989).
 

 Atkin does not contend that the affidavits contained materially false affirmative statements, but rather that they omitted information crucial to evaluating the credibility of Sturman, Delgado, and others who provided information to the government.
 
 [3]
 
 Although material omissions are not immune from inquiry under
 
 Franks,
 
 we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information.
 
 United States v. Martin,
 
 920 F.2d 393, 398 (6th Cir.1990). This is so because an allegation of omission “ ‘potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant’s benefit.’ ”
 
 Id.
 
 (quoting
 
 United States v. Colkley,
 
 899 F.2d 297, 301 (4th Cir.1990)). If the defendant does succeed in making a preliminary showing that the government affiant engaged in “deliberate falsehood” or “reckless disregard for the truth” in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists.
 
 United States v. Bonds,
 
 12 F.3d 540, 568 n. 26 (6th Cir.1993).
 

 Here, we have little difficulty concluding that the district court was not required to conduct a
 
 Franks
 
 hearing. As in
 
 Martin,
 
 the defendant’s contention is basically that the affidavit failed to provide information which showed that the informants’ credibility could be questioned. 920 F.2d at 398 (rejecting defendant’s argument that he was entitled to a
 
 Franks
 
 hearing because affiant failed to state that principal informant was person of questionable veracity). However, the affidavits did include extensive information about the criminal history of Sturman, Delgado, and Sturman’s son David, who, at the time, had also been interviewed. Among other things, the affidavits contained information describing the Cleveland tax convictions of both Reuben and David Sturman; a separate federal obscenity prosecution against Reuben Sturman in Las Vegas, Nevada; Reuben Sturman’s escape from federal confinement in December, 1992; and another federal indictment of Reuben Sturman in Chicago, Illinois, pending at the time of his interview. The affidavits also recited that Naomi Delgado had appeared in federal court in Cleveland to face witness tampering charges on the same day that she visited Atkin’s office wearing a wire so that the government could tape her conversation with Atkin. The affidavits, which also included information provided by Reuben Sturman’s personal secretary, Stephanie Friedman and her brother, Douglas Friedman, described the latter’s participation in Reuben Stur-man’s December, 1992 escape from prison. Finally, the affidavits also described various promises made by the government to each of these individuals. Based on these inclusions, the reviewing judge had to know that Stur-man, Delgado, David Sturman, and the Friedmans were persons whose veracity could be questioned. Under the circumstances, we find difficult to comprehend how the inclusion of any of the alleged omissions would defeat the showing of probable cause. We conclude that the district court did not err in denying Atkin’s motion without conducting a
 
 Franks
 
 hearing.
 

 B.
 

 Atkin argues that the evidence presented was insufficient to convict him of the
 
 *-366
 
 two charges of obstruction of justice. When a defendant challenges his criminal conviction on the basis of insufficient evidence, we must determine “ ‘whether, after viewing the evidence in the light most favorable to the prosecution,
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ”
 
 United States v. Wright,
 
 16 F.3d 1429, 1439 (6th Cir.) (quoting
 
 United States v. Evans,
 
 883 F.2d 496, 501 (6th Cir.1989), in turn quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)),
 
 cert. denied,
 
 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994). The government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt.
 
 United States v. Peters,
 
 15 F.3d 540, 544 (6th Cir.) (citations omitted),
 
 cert. denied,
 
 513 U.S. 883, 115 S.Ct. 219, 130 L.Ed.2d 146 (1994). In assessing the sufficiency of the evidence, “we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury.”
 
 Wright,
 
 16 F.3d at 1440 (citing
 
 Evans,
 
 883 F.2d at 501).
 

 Atkin appears to concede that the government established that Sturman transferred money to Atkin based on Atkin’s representations that he would use the money to influence the district judge.
 
 [4]
 
 However, At-kin’s challenge to the sufficiency of the evidence focuses primarily on one uncontroverted fact: that Atkin never bribed the district judge. Because he merely defrauded a criminal defendant and did not actually bribe the judge, Atkin argues, he is not subject to conviction for violation of 18 U.S.C. § 1503. Section 1503 provides as follows:
 

 Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 

 Atkin was charged and convicted under the third clause of this section, known as the “omnibus clause,” which applies to one who “corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice[.]”
 
 United States v. Bashaw,
 
 982 F.2d 168, 170 (6th Cir.1992). “ ‘The omnibus clause is essentially a catch-all provision which generally prohibits conduct that interferes with the due administration of justice.’ ”
 
 Id.
 
 (quoting
 
 United States v. Thomas,
 
 916 F.2d 647, 650 n. 3 (11th Cir.1990)). Being “far more general in scope than the earlier clauses of the statute,”
 
 United States v. Aguilar,
 
 — U.S.—,—, 115 S.Ct. 2357, 2362, 132 L.Ed.2d 520 (1995), the omnibus clause does not require proof that the defendant actually influenced an officer of the court. Instead, to sustain a conviction under this clause, the government must prove that the defendant acted with an intent to influence judicial proceedings.
 
 Id.
 
 Moreover, the defendant’s actions need not be successful; an “endeavor” suffices, so long as that endeavor has the natural and probable effect of interfering with the due administration of justice.
 
 Id.
 
 In other words, the defendant “must at least undertake action ‘from which an obstruction of justice was a reasonably foreseeable result.’ ”
 
 Bashaw,
 
 982 F.2d at 172 (citation omitted).
 

 
 *-365
 
 Atkin’s principal arguments in support of reversal address his lack of success in influencing the district judge. Because the evidence showed that the district judge rebuffed Atkin’s only effort to engage in an
 
 ex parte
 
 discussion of Sturman’s case, Atkin argues that the government failed to show that he was attempting to influence the judge, and similarly failed to show that any endeavor was reasonably likely to succeed. However, this argument overlooks other key evidence of Atkin’s intent, namely, Reuben Stunnan’s testimony that Atkin promised that Stur-man’s money would find its way to the district judge, as well as Sturman’s testimony that Atkin agreed to approach the district judge to obtain a reduced sentence for Stur-man. Atkin’s lack of success is simply not controlling. Had Atkin succeeded in influencing the judge as promised, an obstruction of justice would have resulted.
 

 Although this circuit has not yet determined whether participation in a scheme to defraud which has the potential for interfering with pending judicial proceeding constitutes a violation of § 1503, other circuits have resolved this question in the affirmative.
 
 United States v. Machi,
 
 811 F.2d 991, 998 (7th Cir.1987);
 
 United States v. Silverman,
 
 745 F.2d 1386, 1396 (11th Cir.1984);
 
 United States v. Buffalano,
 
 727 F.2d 50, 54 (2d Cir.1984);
 
 United States v. Neiswender,
 
 590 F.2d 1269, 1273 (4th Cir.),
 
 cert. denied,
 
 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979). As stated by the Fourth Circuit in
 
 Neiswender,
 
 “the defendant need only have had knowledge or notice that success in his fraud would have likely resulted in an obstruction of justice. Notice is provided by the reasonable foreseeability of the natural and probable consequences of one’s acts.” 590 F.2d at 1273. Under the line of decisions following
 
 Neiswender,
 
 a false promise to a criminal defendant that his case will be fixed has the natural and probable effect of interfering with the administration of justice not only because of the possibility that an unlawful solicitation, if made, will be accepted, but also because a false promise that a case will be “fixed” can lull a defendant into abandoning lawful attempts to achieve a desired result,
 
 Buffalano,
 
 727 F.2d at 54, or can otherwise interfere with legal proceedings.
 
 Silverman,
 
 745 F.2d at 1395 (criminal defendant hired new lawyer and entered not guilty plea, after his attorney engaged in false scheme to defraud).
 

 Finding the reasoning of these cases to be sound, we now adopt it, and conclude that it was foreseeable that Sturman would act or fail to act in reliance on the false promise of a bribe, resulting in an obstruction of the due course of the underlying judicial proceeding. If nothing else, Atkin’s act of accepting money from Sturman under the pretense of making a bribe, which was disclosed to others by Sturman, caused a thorough investigation of a federal judge’s finances and could foresee-ably have led to his recusal from the Stur-man case. Because we think Atkin’s actions had the natural and probable effect of interfering with or influencing the due administration of justice, we conclude that the evidence was sufficient to support his convictions for violation of § 1503.
 

 C.'
 

 U.S.S.G. § 3B1.3 provides that an offense level may be increased by two levels “[i]f the defendant ... used a special skill, in a manner that significantly facilitated the commission or concealment of the offense[.]” The application notes to this section define a “special skill” as
 

 a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots,
 
 lawyers,
 
 doctors, accountants, chemists, and demolition experts.
 

 U.S.S.G. § 3B1.3, comment, (n.2) (emphasis supplied). Atkin argues that the district court erred in enhancing his sentence on Counts 1 through 9 based on a finding that he had used his skill as a lawyer to facilitate commission or concealment of the offense. We review a district court’s factual finding regarding application of § 3B1.3 for clear error.
 
 United States v. Williams,
 
 993 F.2d 1224, 1227 (6th Cir.1993).
 

 Application of the enhancement under § 3B1.3 for use of a special skill requires only proof that the defendant’s use of
 
 *-364
 
 that skill makes it significantly “easier” for him to commit or conceal the crime.
 
 United States v. Young,
 
 932 F.2d 1510, 1513 (D.C.Cir.1991). In this case, the district court found that Sturman selected Atkin in his attempt to gain more favorable treatment not only because Atkin had a friendship with the district judge but also because Atkin was a lawyer. The district court also relied on testimony indicating that Atkin had asked the district judge “whether or not anything could be done for Mr. ■ Sturman.” Finally, the district court relied on testimony indicating that Atkin instructed Sturman to send the purported bribe money to Atkin’s trust account.
 

 We conclude that the district court’s factual findings are not clearly erroneous, and that the district court properly applied § 3B1.3. Although, as we have already noted in Part II.B. above, Atkin was unsuccessful in getting the district judge to engage in an
 
 ex parte
 
 discussion of Sturman’s case, the ostensible normalcy of his visit to chambers could well have precluded further inquiry from the district judge or any other person who might have been suspicious regarding Atkin’s entry into chambers. The evidence strongly indicates that Atkin was well aware that he could use his position and skills as an attorney to conceal the true nature of his actions, and the evidence further supports a finding that he did precisely that. In November, 1991 Atkin sent a bogus letter to Reuben Sturman purporting to offer his services in pursuit of a claim of ineffective assistance of counsel. In the letter, Atkin stated that “[m]y fee to research and develop that will be $250,000.”
 
 [5]
 
 Although Atkin ultimately accepted a total of $550,000 from Reuben Sturman, he never filed any pleading, motion, or brief on the latter’s behalf in any court, nor did he ever make any official court appearance, apart from the
 
 ex parte
 
 visit to the district judge on behalf of Reuben Sturman.
 

 We also note, as did the district court, that Atkin used his trust account to conceal his crimes. In depositing funds received from Sturman in the trust account, Atkin knew that the funds might take on the appearance of being legitimate.
 
 See United States v. White,
 
 1 F.3d 13, 18 (D.C.Cir.1993) (§ 3B1.3 enhancement for use of special skill properly applied where defendant-lawyer established trust account to pay himself for part in passport fraud scheme),
 
 cert. denied,
 
 510 U.S. 1111, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994). The district court’s finding that Atkin used his skill as a lawyer in a manner justifying application of § 3B1.3 is not clearly erroneous, and we decline to disturb the district court’s application of the enhancement.
 

 Ill
 

 For the foregoing reasons, we AFFIRM.
 

 [1]
 

 . David Sturman testified at trial that his father had instructed him to hire Atkin as local counsel because Atkin was "close” to the district judge and it would be beneficial to have Atkin serve on the case.
 

 [2]
 

 . At trial, the district judge testified that Atkin approached him in chambers, asking "can anything be done for Mr. Sturman." According to the district judge, he abruptly responded that he "[did not] rule on things that aren't before me.” Atkin dropped the matter and left chambers. The district judge testified that he was subsequently investigated by both the Federal Bureau of Investigation and Internal Revenue Service. He was not charged with any wrongdoing.
 

 [3]
 

 . In his motion filed below, Atkin did argue that the affidavits not only omitted material information but also contained false affirmative statements, including a statement that Atkin accepted his first payment from Sturman after the jury had already returned guilty verdicts (this was inaccurate; the first $100,000 payment was made several days before the jury concluded its deliberations), and a statement that Sturman never paid Atkin legal fees (Sturman apparently agreed to pay one-half of Atkin’s $25,000 fee to act as local counsel for David Sturman; David Sturman was to pay the other one-half). On appeal, however, Atkin has abandoned any argument that these statements had any bearing on a finding of probable cause; instead, he focuses only on the alleged omissions discussed herein.
 

 [4]
 

 . In his brief, Atkin concedes that the evidence at trial “may have established" that he received money from Sturman; that Atkin claimed he could influence the district judge; and that Stur-man transferred money to Atkin based on those representations. Appellant’s Brief at 11.
 

 [5]
 

 . At trial, Sturman testified that Atkin’s letter was "nonsense.” He also testified that he had no interest in pursuing an ineffective assistance of counsel claim against his trial attorney. Clearly, the jury did not believe that Sturman had paid Atkin $250,000 for the purpose of preparing such a claim.