**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 08a0639n.06**
**Filed: October 21, 2008**

**No. 07-3249**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| JOSEPH D. WEISBERG, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

BEFORE: BOGGS, Chief Judge, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

After defendant Joseph D. Weisberg repeatedly failed to pay income taxes over several years and used his client trust fund to hide his assets, the United States charged him with tax evasion. Defendant pleaded guilty, and the district court sentenced him to five months of incarceration, five months of home arrest, and three years of supervised release. The government appeals defendant's sentence, arguing that the district court erred by refusing to impose an enhanced sentence because of defendant's "special skill" and that the sentence was unreasonably lenient. We hold that the district court did not abuse its sentencing discretion in finding that the crime did not involve a "special skill," U.S.S.G. § 3B1.3. Therefore, we affirm.

I.

Weisberg was an Ohio attorney who has a history of failing to pay his federal income tax liabilities. He filed accurate tax returns every year, but often failed to pay the amount due. In 1996, Weisberg consented to an IRS installment plan requiring him to pay $150 each month to satisfy outstanding tax liabilities from tax years 1988, 1989, 1990, 1991, and 1992. As part of the plan, Weisberg agreed to file timely future tax returns and pay all future taxes when they were due. According to the agreement, if defendant failed to meet its terms, his entire tax liability would become immediately payable.

Weisberg timely paid his income tax obligations for tax years 1993, 1994, 1995, and 1996. However, on October 16, 1998, when Weisberg filed his income tax return for the tax year 1997, he reported a tax obligation of $56,279, but only included payment in the amount of $27,000, leaving an unpaid balance of $29,279. As a result of defendant's noncompliance, the IRS terminated the agreement regarding tax years 1988-1992.

Defendant's tax avoidance continued for the next several years. He consistently filed accurate tax returns while making insufficient payments. From November 1998 through November 2002, the IRS sent Weisberg twenty-seven notices and demands for payment, including six "Final Demand for Payment" notices via certified mail that defendant refused to accept. By December 2002, Weisberg owed $321,654 in unpaid taxes, fees, and interest.

Weisberg successfully evaded collection from 1997 through 2002 by depositing personal funds in his client trust account (IOLTA account). By using his IOLTA account to pay personal

expenses, defendant's expenditures went unnoticed by the IRS. From 1997 to 2002, Weisberg paid himself a total of $219,706 from his IOLTA account.

In January 2000, Weisberg negotiated with the IRS, through his accountant Thomas Jaffee, for a new installment plan. Weisberg told Jaffee that he had no funds to pay his tax debt, and Jaffee relayed this message to the IRS. Weisberg's statement was false; he had a "substantial amount" of funds in his IOLTA account. To help his negotiating position, Weisberg submitted a false IRS form listing a negative balance of $313. Through Jaffee, defendant advised the IRS that he intended to borrow sufficient money from friends and family to pay the full amount listed on his year 2000 tax return. However, Weisberg used funds from his IOLTA account to satisfy his 2000 tax liability. He used a certified check to disguise the fact that the funds came from his IOLTA account.

The IRS eventually discovered the IOLTA account, and thereafter on July 6, 2005, Weisberg was indicted in the United States District Court for the Northern District of Ohio for one count of felony tax evasion in violation of 26 U.S.C. § 7201. On August 21, 2006, Weisberg pleaded guilty. The charge carried a maximum sentence of five years' imprisonment. The Presentence Investigation Report ("PSI") calculated defendant's Base Offense Level as 18, based on a tax loss of $321,654. The PSI suggested a two-level increase pursuant to U.S.S.G. § 3B1.3 because "[t]he defendant is a lawyer, and therefore possesses a 'special skill' that requires substantial education and licensing. The defendant used this special skill to facilitate the instant offense. Therefore the offense level is increased by 2." With the two-point increase, Weisberg's advisory Guideline range of imprisonment was 33 to 41 months.

At the sentencing hearing, the district court granted Weisberg a two-level reduction pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility.[1]  Also, pursuant to a prior agreement between the parties, the government and the district court granted an additional one-level reduction under U.S.S.G. § 3E1.1(b).

Next, the district court considered, but rejected, the suggested two-level enhancement for use of a "special skill" pursuant to U.S.S.G. § 3B1.3:

> [H]aving been a practicing lawyer for more than three-and-a-half decades, I could find no recollection of what Mr. Weisberg is accused of doing, being a very special skill.  Not only are there no cases, but it doesn't [take] a lawyer to use an escrow account, to use a false name or false Social Security number on a bank account or otherwise to . . . [hide] assets in an attempt to avoid or evade, as he has been accused and has pled guilty to, the payment of taxes for which he filed returns.  And it appears to me that it takes no special skill to do what he did.  And certainly he, as an attorney, possessed no such special skill.

The Honorable David A. Katz summarized his ruling as follows:  "I have concluded that there is no special skill, there is no abuse – abuse of a position of public or private trust as contemplated by § 3B1.3, and I will not make that adjustment."

After refusing a downward adjustment due to defendant's health problems, the court concluded that Weisberg's final offense level was 15.  The district court calculated the Guidelines range for offense level 15 with a Criminal History category of I as 18 to 24 months.  Judge Katz stated that "I believe a sentence of imprisonment is justified in this case, given the amount of

---

[1]Although this reduction was made over the government's objection, the government has not appealed this ruling.

financial harm caused by his crime and the duration of time over which it occurred. The applicable

guideline range of 18 to 24 months, however, in my view is not justified."

> The district judge explained his reasons for granting a variance as follows:

> This defendant has no prior record and has served his profession well since 1967. He appears to have or at least have had a serious gambling problem and a serious medical history of heart disease, high blood pressure and diabetes. While these maladies do not justify a reduction of guideline levels under the guidelines or the case law, I recognize these are impairments from which he suffers. Also not to be considered for sentencing purposes, but recognize as fact is his loss of his legal license to practice law and this felony conviction.

> Taking into consideration his years of unblemished service as an attorney and the nature of the crime, I believe a lower range of imprisonment consummate with a level 12, criminal history one, of 10 to 16 months, is more appropriate. It is sufficient, but neither lessor or greater than necessary to comply with the purposes of sentencing set forth in [18 U.S.C. § 3553(a)(2).]

The district court then imposed a split sentence of five months imprisonment and five months of

home confinement. The court additionally imposed a three-year term of supervised release, the

maximum allowed.

> The government timely appealed.

II.

The government argues that the district court erred by refusing to increase Weisberg's

advisory Guideline calculation by two levels for abuse of a special skill pursuant to U.S.S.G. §

3B1.3. We review the district court's findings of fact for clear error regarding whether Weisberg

used a special skill in the commission of his crime. *United States v. Wilson*, 345 F.3d 447, 449 (6th

Cir. 2003).

The Guideline at issue provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).

U.S.S.G. § 3B1.3.

Application Note 4 to § 3B1.3 states that a "'[s]pecial skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples [] include pilots, lawyers, doctors, accountants, chemists, and demolition experts."

The government argues that Weisberg's status as an attorney required him to maintain an IOLTA account, and that not only "did Weisberg's use of the IOLTA account make it easier to commit and conceal his evasion of payment, he used the account as the principal mechanism of the crime."

Weisberg asserts that his crime did not involve a special skill, and if he "had kept his money in cash under his mattress, the government would have been in the same position." Defendant suggests that "anyone who believes that it takes special skill to open an IOLTA account or to deposit money in such an account has never opened one."

The district court ruled that Weisberg's use of an IOLTA account to hide funds was no different than someone's use of a regular escrow account to hide funds. We agree. The criminal act was evasion, not fraudulent use of an IOLTA account. In our view, the fact that Weisberg used an

IOLTA account, instead of an escrow account, a savings account, an offshore bank account, or cash underneath his mattress, is immaterial.

The government relies upon *United States v. Atkin*, 107 F.3d 1213 (6th Cir. 1997), *United States v. Minneman*, 143 F.3d 274 (7th Cir. 1998), and *United States v. Kubick*, 205 F.3d 1117 (9th Cir. 1999), as examples of cases in which courts have applied § 3B1.3 to an attorney's special skill. But each of these cases involved legal knowledge beyond simply having access to an IOLTA account. *Atkin* involved an attorney who was hired by a client to bribe a judge. *Atkin*, 107 F.3d at 1215. The *Atkin* court upheld the application of a § 3B1.3 enhancement because the defendant's position as an attorney concealed the devious nature of his attempt to engage in an ex parte discussion with the judge regarding his client's case. *Id.* at 1220 ("the ostensible normalcy of his visit to chambers could well have precluded further inquiry from the district judge or any other person who might have been suspicious regarding Atkin's entry into chambers."). The crime in *Atkins* was facilitated by the defendant's use of his skill as an attorney, whereas the crime at bar simply involved the choice of an account and was not made easier by Weisberg's legal training.

The government's other cases are equally inapposite. In *Minneman*, 143 F.3d at 283, the Seventh Circuit upheld the application of a § 3B1.3 enhancement to an attorney who invoked attorney-client privilege to evade discovery from the IRS, and used his particularized knowledge of tax law to file fraudulent tax returns. There, the defendant's status as an attorney was pivotal: if he were not an attorney, he could not have invoked attorney-client privilege, and he relied upon his legal training to file falsified documents with the IRS. *Id.* The present case is distinguishable. Weisberg

was a tax evader who was also an attorney; he did not rely on his status as an attorney in order to commit the crime. If Weisberg were not an attorney, he would still have been able to engage in the same acts using a different type of hidden bank account instead of an IOLTA account. *Kubick*, 205 F.3d at 1120, is equally distinguishable. The defendant in *Kubick* used his legal training to establish shell corporations in order to hide assets during bankruptcy proceedings. In both *Minneman* and *Kubick*, the crime depended upon special knowledge. In the instant case, the crime involved simply hiding funds from the IRS. The funds were concealed in a lawyer's trust account, but the crime would have occurred had they been hidden elsewhere. We hold that the district court correctly ruled the use of an IOLTA account to conceal funds did not require use of a "special skill" as contemplated by § 3B1.3.

The government also argues that Weisberg "used his legal skills to submit a false financial statement to the IRS. This conduct, by itself, warrants an upward adjustment for use of a special skill." It is unclear whether the government is referring to Weisberg's failure to report his IOLTA account on a tax form, or the false representation he made through his tax preparer. Regardless, because Weisberg did not rely upon his special training as an attorney to mislead the IRS, we affirm the district court's denial of the § 3B1.3 enhancement.

### III.

Next, the government argues that Weisberg's sentence was unreasonably lenient. We review sentencing decisions "under a deferential abuse-of-discretion standard for procedural and substantive reasonableness." *United States v. Gray*, 521 F.3d 514, 542 (6th Cir. 2008) (citing *United States v.*

*Bolds*, 511 F.3d 568, 578 (6th Cir. 2007)); *see also Gall v. United States*, 128 S. Ct. 586, 594 (2007);

*Rita v. United States*, 127 S. Ct. 2456, 2470 (2007). Reasonableness has both a substantive and

procedural component. *Gall*, 128 S. Ct. at 597.

In order for a sentence to be considered procedurally reasonable, a district court "must

properly calculate the guidelines range, treat the guidelines as advisory, consider the [18 U.S.C.] §

3553(a) factors and adequately explain the chosen sentence – including an explanation for any

variance from the guidelines range." *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008)

(citing *Gall*, 128 S. Ct. at 597). A district court does not need to engage in a "ritualistic incantation

of the relevant § 3553(a) factors," *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir.

2007), but needs merely to provide enough detail to allow an appellate court to conduct a meaningful

appellate review. *Grossman*, 513 F.3d at 595 (citing *United States v. McGee*, 494 F.3d 551, 556 (6th

Cir. 2007)).

The government argues that the district court incorrectly calculated the sentencing Guideline

range by using a final sentencing Guideline of 15 instead of 17. The Base Offense Level was 18,

with the three-level decrease for acceptance of responsibility, the new level was 15. The

government's insistence that the new level should have been 17 is merely a repetition of its § 3B1.3

argument. We concluded above that the failure to apply § 3B1.3 was not an error, *a fortiori* it is not

an abuse of discretion.

The government argues further that the district court acted unreasonably in its decision to

grant a downward sentence variance equivalent to a three-level Guideline reduction. The

government argues that the Guidelines "discourage downward departures for community service," and that "[t]ax evasion is a serious crime and requires a serious sentence." In particular, the government disagrees with the district court's "72% reduction" from the Guidelines range. In making this argument, the government fails to recognize the amount of deference that appellate courts must give to the sentencing judge. The Supreme Court recently articulated this level of deference in *Gall*, 128 S. Ct. 586 (2007).

Here, the district court thoroughly explained its reasons for imposing the sentence variance. On appeal, we must determine whether the sentencing judge abused his discretion. *Gall*, 128 S. Ct. at 597. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id*. While the sentence did vary significantly from the Guideline range, the district court explained its reasons for doing so, and the "sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him . . . ." *Rita*, 127 S. Ct. at 2469. The record establishes that the district court considered the relevant sentencing factors and had a well-articulated rationale for its variance. The government has not shown that the district court abused its discretion. Thus, we conclude that defendant's sentence was reasonable.

## IV.

For these reasons, we affirm the judgment of the district court.