**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0730n.06

No. 07-6190

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Nov 09, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ULYSSES ROBINSON, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant -Appellant. | ) | |
| _____ | ) | |

**BEFORE:  GUY, CLAY and WHITE, Circuit Judges.**

**WHITE, Circuit Judge.**   A federal grand jury charged defendant Ulysees[1] Robinson in a three-count indictment with possession with intent to distribute 5 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  The district court denied Robinson's motion to suppress evidence seized pursuant to a search warrant.  Following a jury trial, Robinson was convicted as charged, and sentenced to 360 months' imprisonment (as a career offender).  Robinson appeals the denial of his motion to suppress the search warrant.  We AFFIRM.

---

[1]The Magistrate's Report and Recommendation notes that Robinson "testified at the [suppression] hearing that the spelling of his first name is Ulysees, rather than Ulysses.  The Court will adopt the accurate spelling of the defendant's name in any textual reference.  However, the style [caption] of the case will remain the same as it reflects the indictment."  ROA v. 1, 36.  This court's docket sheet also has Robinson's first name spelled as "Ulysses."

No. 07-6190
*United States v. Robinson*

I

After three uncontrolled buys during which the seller was followed by undercover agents to 1828 Norlil Road, Sevierville, Tennessee, police sought and obtained a search warrant for the residence at that address. Robinson, who was present when the search warrant was executed and who was charged based on items found during the search, moved to suppress the evidence seized pursuant to the warrant, asserting that the affidavit in support of the search warrant included false statements and omitted material facts, and that the affidavit failed to establish probable cause to believe that evidence of criminal activity would be found at the Norlil Road residence.

Following a suppression hearing, the magistrate judge recommended denial of Robinson's motion to suppress, concluding that given the ongoing and continuous nature of the apparent criminal enterprise, more than a fair probability existed that cocaine, contraband, marked money, or other evidence of criminal activity would likely be found at 1828 Norlil Road.

Robinson filed a notice of objection to the magistrate's decision, but did not articulate a specific objection. The district court, while noting the absence of any specific objection by Robinson, stated that it nonetheless had reviewed the magistrate's report and recommendation *de novo*. The district court adopted the conclusions of the magistrate, overruled Robinson's objections, and denied Robinson's motion to suppress.

A

Preliminarily, the Government asserts that because Robinson failed to object specifically to the magistrate judge's Report and Recommendation, his challenge to the denial of his suppression motion is unreviewable. Although this court has held that "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object[,]" *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991), and the district court properly could have rejected Robinson's arguments on this basis alone, as could we, because the district court chose to decide this issue on the merits, we will review it on the merits as well.

B

This court reviews a district court's decision on a motion to suppress under two standards: factual findings are to be upheld unless clearly erroneous, and legal conclusions as to the existence of probable cause are reviewed de novo. *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004). This court accords great deference to an issuing judge's finding of probable cause in a search warrant application. *United States v. Williams*, 544 F.3d 683, 685 (6th Cir. 2008). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983)).

> The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, . . . ." U.S. Const. Amend. IV. Whether a warrant should issue, and the underlying question of whether probable cause has been established, are to be decided "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 92 L.

Ed. 436 (1947). The Supreme Court has established that a warrant must be upheld as long as the "magistrate had a 'substantial basis for . . . concluding' that a search would uncover evidence of wrongdoing . . . ." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (internal citations omitted). In order to be able to properly determine whether probable cause exists sufficient to issue a warrant, the magistrate must be presented with an affidavit containing adequate supporting facts about the underlying circumstances, either from the direct knowledge of the affiant or from reliable hearsay information; bare conclusions are not enough. [*United States v.*] *Weaver*, 99 F.3d [1372,] 1377 [(6th Cir. 1996).] "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S. Ct. 2317. We apply this "totality of the circumstances" test to the affidavits presented in this case.

*United States v. West*, 520 F.3d 604, 609 (6th Cir. 2008).

*Franks v. Delaware*, 438 U.S. 154 (1978), "recognized a defendant's right to challenge the sufficiency of an executed search warrant on the basis that 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause[.]"

*United States v. Atkin*, 107 F.3d 1213, 1216 (6th Cir. 1997) (quoting *Franks*, 438 U.S. at 155-56).

However, under *Franks*, the defendant is entitled to an evidentiary hearing on the veracity of the statements in the affidavit

if and only if (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false *and* (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side.

*Atkin*, 107 F.3d at 1216-17 (quoting *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989) (emphasis in original)).

In *United States v. Leon*, 468 U.S. 897, 922 (1984), the Supreme Court held that evidence

need not be excluded if it was obtained by police officers acting in reasonable reliance on a search

warrant issued by a detached and neutral magistrate but ultimately found to be invalid. However,

"[s]uppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was

misled by information in an affidavit that the affiant knew was false or would have known was false

except for his reckless disregard of the truth." *Id.* at 923, citing *Franks*, 438 U.S. 154.

II

The affidavit in support of the search warrant stated:

1. I am a Special Agent with the State of Tennessee Fourth judicial district Drug and Violent Crime Task Force. I have been employed by the Pigeon Forge Police Department for approximately 6 years, the past 2.5 years of which I have been assigned to the Drug Task Force . . . . During the past 11 years as an officer and Drug Task Force Agent I have been involved with or participated in approximately 300 narcotic investigations. I have worked in an undercover capacity to purchase narcotics and gain intelligence. I have executed search warrants, conducted surveillance of drug transactions, seized evidence, arrested suspects, interviewed suspects and conferred with Local, State, and Federal Prosecutors and other Law Enforcement Officials in my community regarding narcotic investigations, and as a result, gained considerable experience.

2. On October 27, 2004, while in an undercover capacity, I purchased cocaine from an individual. During that undercover drug transaction after the individual was given money by me, Drug Task Force Agents followed the person to 1828 Norlil road Sevierville, Tennessee. The individual then brought back what was believed to be Cocaine from the residence.

3. On November 04, 2004 while in an undercover capacity, I purchased cocaine from the same individual. During that undercover drug transaction after the target was given money by me, Drug Task Force Agents followed the person to 1828 Norlil road Sevierville, Tennessee. The individual then brought back what was believed to be Cocaine from the residence.

4. On November 05, 2004 a third undercover drug transaction was conducted from the same individual. The individual was followed to 1828 Norlil Road Sevierville, Tennessee. The individual then brought back what was believed to be cocaine from the residence.

5. The white powder substance in the above three occasions field tested positive for cocaine.

6. Based on above intelligence, surveillance, experience and training, Affiant David L. Joyner believes that illegal narcotics and drug proceeds are in the residence of 1828 Norlil road Sevierville, Tennessee. The residence to be searched has a physical address of: 1828 Norlil Road Sevierville, Tennessee.

7. I request to search the above mentioned residence, including outbuildings and vehicles for: narcotics, packaging materials used to package and preserve narcotics, weighing devices . . . and other documentation which reflect narcotic sales, weapons, which are used as protection devices in the illegal drug trade, illegal drug proceeds and surveillance equipment. All of these items constitute contraband; property used, or intended to be used in commission of a drug offense in violation of the laws of the State of Tennessee.

The magistrate judge conducted a suppression hearing. Special Agent David Joyner of the Pigeon Forge Police Department testified at the hearing that he obtained a search warrant for 1828 Norlil Road on November 5, 2004, and that he and several other drug task force officers executed the warrant on that date. Agent Joyner testified that on October 27, November 4, and November 5, 2004, a cooperating individual/confidential informant drove him to a parking lot to meet with Gill Thomas, who was unaware that Joyner was working undercover. The confidential informant had contacted Thomas to purchase cocaine and arranged the transactions. On each of the three dates, Thomas approached the driver's side of the car, and Joyner gave marked bills to the cooperating individual, who handed them to Thomas in Joyner's presence. Thomas was under surveillance by Officer Kevin Bush, who testified that on each of the three mentioned dates, he followed Thomas

from the location at which Thomas met Joyner and the confidential informant to 1828 Norlil Road, observed Thomas go inside 1828 Norlil Road and emerge about five minutes later, and followed Thomas as Thomas drove straight back to Agent Joyner's (and the confidential informant's) location.

When Agent Joyner and other officers executed the search warrant on November 5, 2004, Robinson had cocaine in his pocket, and the officers found digital scales, marked currency and a loaded firearm in the house.

Agent Joyner testified that Thomas was unaware that he (Thomas) was participating in a police investigation. Joyner testified that Thomas was not searched before he went on the three buys because it would have exposed the undercover operation.

Neither party cites to questioning or testimony at the suppression hearing addressing why Agent Joyner did not include in the search warrant affidavit that a confidential informant arranged and participated in the cocaine buys (and that the confidential informant, rather than Agent Joyner, handed the buy money to Thomas). Robinson correctly asserts that the Government's appellate brief's facts section does not mention the confidential informant. However, the argument section of the Government's appellate brief asserts: "That Agent Joyner did not personally hand the money to Thomas, but rather gave it to the cooperating individual who, in turn, handed it to Thomas in front of the agent does not negate Agent Joyner's representation that he gave money to Thomas for which he subsequently received cocaine (again, via the cooperator who was accompanying the agent)."

Robinson asserts that Agent Joyner misled the issuing magistrate by omitting several crucial facts from the search warrant affidavit: 1) there was no mention of the participation of the female confidential informant (CI) who actually conducted the buys; 2) there was no mention that the "individual" dealing with the female CI, the seller, was not searched to make sure that he did not already have drugs on him; and 3) there was no reference to the fact that the "individual" was not searched to make sure he did not possess any significant amount of money. Robinson argues that because Agent Joyner recklessly disregarded important facts in his affidavit, the issuing judge was misled, probable cause was not established, and the district court's order denying Robinson's motion to suppress must be reversed and his conviction vacated.[2] Robinson also asserts that in finding the affidavit sufficient to support the warrant, the magistrate erroneously relied on information provided at the suppression hearing that was not in the affidavit. We find no error in the denial of Robinson's motion to suppress.

The magistrate judge's Report and Recommendation states in pertinent part, "In the case at hand, both the affidavit and the uncontroverted testimony at the hearing established that Joyner and the CI brought money to an apparently unsuspecting Thomas and asked him to obtain cocaine for them." *See also* portion of Report and Recommendation quoted *infra*. It is unclear on what basis the magistrate judge concluded that the affidavit established that Joyner and the CI brought money to Thomas for the buy. The affidavit did not mention the CI, and without that information, it can

---

[2]Robinson does not argue that he was entitled to a further evidentiary hearing under *Franks*, *supra*.

only be read as saying that Joyner gave the money to Thomas directly. In any event, although the affidavit omits the participation of the CI, Joyner's statements were, nevertheless, based on personal observation. The import of the magistrate's conclusion is sound. Thomas was given buy money by Joyner, albeit through the hands of the CI, in Joyner's presence. Under these circumstances, we agree with the Government that Robinson has not shown that Agent Joyner purposely excluded information from his affidavit or that he intended to mislead the judge who issued the warrant.

III

Regarding whether probable cause existed to search 1828 Norlil Road, the magistrate judge's Report and Recommendation states in pertinent part:

> Defendant Robinson argues that the affidavit did not supply sufficient probable cause to support the issuance of a search warrant for 1828 Norlil Road. Defendant argues that the nature of the investigation, "uncontrolled buys," presents so many evidentiary shortcomings that it cannot provide the basis for issuance of a search warrant. Defendant Robinson presented a number of alternative scenarios to the sale of cocaine from 1828 Norlil Road. While the Court agrees that "controlled buys," [*sic*] would provide a superior basis for a probable cause finding, the issuing Tennessee state Circuit Court Judge Vance had only the three uncontrolled buys from which to draw his conclusion. . . .
>
> In the case at hand, both the affidavit and the uncontroverted testimony at the hearing established that Joyner and the CI brought money to an apparently unsuspecting Thomas and asked him to obtain cocaine for them. [Officer] Bush then followed Thomas from Joyner and the CI to 1828 Norlil Road, never losing sight of him. Thomas went inside the address for a short time, then returned to his car and traveled directly back to Joyner and the CI where he handed over the requested cocaine. This scenario happened the same way three times in less than 10 days, including the day of the search warrant request. These facts were presented to the state Circuit Court Judge in the form of an affidavit and application for a search warrant. The Court finds that it was a reasonable, common sense deduction that

Thomas went to the house at 1828 Norlil Road and exchanged the buy money for cocaine and returned with the cocaine and delivered it to Joyner and the CI. As such, and given the repeated, ongoing and continuous nature of this apparent criminal enterprise, from October 27, 2004 through November 5, 2004, there existed more that [*sic*] a "fair probability" that cocaine, contraband, the marked money, property designed for use or intended for use or used in committing a crime (e.g., weapons), or other evidence of criminal activity would likely be found inside 1828 Norlil Road.

The Court concludes that this affidavit supplied sufficient facts to constitute a substantial basis for concluding there was, "a probability or substantial chance of criminal activity, not an actual showing of such activity" at this residence. Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983).

In a closely related argument, defendant Robinson challenges the sufficiency of the nexus between any criminal activity and 1828 Norlil Road, to support a search warrant; much argument was devoted to the person of the defendant. A search warrant affidavit must identify the place to be searched, the objects or type of evidence sought, and a nexus between the two that is, it must state why the affiant believes the evidence will likely be found in that place. United States v. Hython, 443 F.3d 480, 485 (6th Cir. 2006) (citing United States v. VanShutters, 163 F.3d 331, 336 (6th Cir. 1998). . . For the[se] reasons the Court finds that the issuing judge had adequate information before him that provided a substantial basis for concluding that adequate probable cause existed for the issuance of the search warrant for this residence[.] The Court likewise finds there was sufficient nexus between the criminal activity described in the affidavit and the location to be searched. Each time money was given to Thomas, he traveled to the same location (1828 Norlil Road) that was the subject of the search warrant and each time returned with cocaine. In fact, due to the nature of this continuing operation, the connection between the sale of cocaine and the location to be searched was the gravamen of the affidavit; there was no information about an individual to be found at the location. The whole operation centered on the specific address, and as such, this Court finds there was sufficient nexus between the undercover purchases of cocaine and the house at 1828 Norlil Road. Accordingly, the Court finds the search warrant was supported by sufficient probable cause and a sufficient nexus to the place to be searched. [Footnote omitted.]

A warrant must be upheld as long as the "magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing . . . ." *Gates*, 462 U.S. at 236. In order to be able to properly determine whether probable cause exists sufficient to issue a warrant,

the magistrate must be presented with an affidavit containing adequate supporting facts about the underlying circumstances, either from the direct knowledge and observations of the affiant or from reliable hearsay information; bare conclusions are not enough. *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

We first observe that Robinson correctly asserts that the magistrate judge recited facts that were testified to at the hearing, but were not in the affidavit. These facts are not, however, crucial to the finding of probable cause. It is true that the affidavit does not state that Thomas was seen entering 1828 Norlil. Nor does it state that he was given "marked" bills. Neverthess, it stated that on all three occasions he was followed to that address and that he immediately returned to Joyner and delivered the cocaine. Further, the bills being marked is irrelevant until the money is recovered. Nor does the affidavit mislead one to believe that Thomas was searched at any point in the transaction. Applying the "totality of the circumstances" test, we agree with the magistrate judge and the district court that the affidavit supplied adequate supporting facts to constitute a substantial basis for concluding there was a fair probability that evidence of criminal activity would be found at 1828 Norlil. *See Gates*, 462 U.S. at 243-44 n.13. This conclusion does not change when the

involvement of the CI is added to the equation; nor is it undermined by the fact that the buys were

not "controlled."[3]

We AFFIRM the district court's denial of Robinson's motion to suppress.

---

[3]Because we reject Robinson's attacks on the warrant, we need not address whether the police were entitled to rely on the magistrate's authorization.

**CLAY, Circuit Judge, concurring in the judgment only.** Because Defendant admits that his trial lawyer posed only a general objection to the magistrate judge's report and recommendation, and failed to file specific objections, our inquiry should end there. I agree with the district court's order dismissing Defendant's objections to the magistrate judge's report and recommendation in the absence of any specific objection, adopting the conclusions of the magistrate judge, and overruling Defendant's objections.

Our task on appeal should have been to simply affirm the district court's order of dismissal as a result of Defendant's failure to file appropriate objections to the magistrate judge's report and recommendation. Instead, the majority opinion engages in an extensive discussion of the merits of the appeal and the issue of whether the Defendant's motion to suppress should have been granted or denied. I would not have reached the merits of the appeal. As the majority itself notes, our precedent is clear that a "general objection to the entirety of the magistrate's report has the same effect as would a failure to object." *Howard v. Sec'y of Heath & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) (holding that "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review). These cases support our decision in *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981), where we held that "a party shall file objections with the district court or else waive right to appeal." *See also*, *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir.

2007) (acknowledging that "a general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal").[1]

For these reasons, and because I disagree with the majority's decision to consider the merits of the appeal, I do not join the reasoning of the majority opinion.  Instead,  I concur in the judgment only.

---

[1] Because the *Walters* rule is not jurisdictional, we may waive it in the "interests of justice." *See, e.g., Souter v. Jones,* 395 F.3d 577, 585 (6th Cir. 2005).  However, this case does not present, and the majority does not find, any facts sufficiently compelling to waive our default rule.